Michael McTighe, counsel for appellant, defended Comcast Corporation. I'd like to reserve three minutes for rebuttal. The usual appeal is whether the district court erred by failing to order plaintiff to arbitrate his dispute with Comcast in the face of plaintiff's admissions, the testimony and the documentation that demonstrated that plaintiff knew he was a party to Comcast Subscriber Agreement and therefore he was bombed by its arbitration clause. Alternatively, it's whether the district court erred by summarily denying Comcast's motion to compel in violation of the Federal Arbitration Act, which requires that factual disputes relating to contract formation be decided at a trial. Plaintiff subscribes to Comcast's high-speed Internet service. His dispute with Comcast relates to a brief period in April 2004, when on three separate days, some Internet customers experienced service problems, each of which lasted no more than a few hours. Five days after this resolution, plaintiffs initiated this putative class action. I start with plaintiffs' pleadings because they're telling. As a threshold matter, there's no dispute that the arbitration provisions cover plaintiff's claims. One of those claims is for breach of contract. In his pleadings, plaintiff repeatedly referred to this contract as his contract, as his, quote, subscription agreement. He can relate, if he's suing on something that you've advertised and you've publicized, that you'll have this continuous service. Well, what he does in the complaint, though, Your Honor, is he says, I'm suing under the subscription agreement, as well as promises that were communicated and implied. So he's referring to a written agreement, which he says, I can't find. I looked for it. I know I have an agreement, but I can't find it. In those circumstances, we submit, Your Honor, that he has, he knows he's a party to a written agreement. He has, he has knowledge of it. He's admitted knowledge of it, and he has an obligation, therefore, to go find it if he can't locate it in his The court, in its, in its ruling, made such a determination. Well, his position is that this promise was made to him and others. He did not agree to any arbitration, and therefore, it's part, it's more than advertising or puffing or whatever, that was well known by others, as well as him, that although he didn't agree to any arbitration. So what's wrong with that? Well, how can you say that in his, in his pleading, Your Honor, that Comcast promises were set forth in his subscription agreement, as well as in these so-called advertisements that they were always on? He distinguishes between the two. By, by admitting that, we submit it's over for him. He admits knowledge that he's bound by this agreement. Is your strong argument, though, that when he discontinued part of the service and signed up for the balance of it, that he actually signed an agreement at that point, although the subscription agreement was not part of what he signed in his continuing relationship with you, he acknowledged that he was bound by that subscription agreement? Well, I call that a silver bullet. I submit, actually, that the, that what I would call a re-acknowledgement of his commitment under the, under the subscriber agreement, it's over. If you look at that document, which is, which is 109 of the, of the joint appendix, it's clearly a downgraded service. He's continuing service. And he recognizes that he's bound by the subscription. I'm, and he still has service with Comcast. Let me ask you about that document. If, if you would, I, I, I looked at the joint appendix. Is there a back to that document? Does it have the, does it reiterate the terms? No, this, this document, I do not believe had a back to it. Okay. I read it. I went looking for my agreement. I had one that I signed on a similar work order that had the terms on the back. Right. This, this one did not have the terms on it. This one did not. There were some, Comcast had used different forms over, over a period of time. I don't know if you want me to recuse or not, because I have Comcast service. You all do. I think many of us do. I'm not asking you to recuse your argument. But, but even if, even if we agree with you that he signed, recognized the subscription agreement, let us say we agree with you that he's bound by it. I'm not saying we do or don't, but if we take your position, are you still vulnerable to a position, which the district court never adjudicated, that the agreement in itself would be unconscionable under the facts of this case? I would submit, Your Honor, that given the, the recent case in Pennsylvania, which is the Sally case, which has essentially said that the Lytle case, if you know what I'm talking about, is no longer good law in this commonwealth. That if you look at the totality of this agreement, there is, the plaintiff cannot show as a matter of both procedural and substantive unconscionability. Well, it's going to show, certainly, it's a contract of adhesion. That's not enough in Pennsylvania, as the Supreme Court just said. And is it a factual question or is it a legal question as to whether or not it's unconscionable? On the facts of this case, I think it's a legal question that it's not unconscionable. And the reason is as follows. Plaintiff has a right to have that arbitration in the jurisdiction of his choosing. He can pick Philadelphia. That's clearly beneficial to him. The second point is Comcast advances the fees and costs associated with the arbitration for the plaintiff. And the third point is, under the Comcast arbitration agreement, plaintiff may seek attorney's fees if he's entitled to them by statute. Under the Pennsylvania Consumer Statute, he's entitled to attorney's fees if he prevails. So there's really, some of the circuits around the country have gone forward and said, look, there's really no meaningful choice here and there's no incentive for someone to bring a case in arbitration to such a small amount of damages and there's no right to attorney's fees. We're not going to enforce it. I disagree with that law, but in this instance, plaintiff is entitled to attorney's fees if he prevails under the Pennsylvania statute and he's entitled to that under this agreement. So as a matter of law, I don't, I can't see how he could prove unconscionability. Well, we're not a fact-finding body. That issue was not before us. I'm just saying that is a a, a, a, a, if you, even if you were to prevail, that is a hurdle for it that you have to overcome. I agree or I was briefed below. The court did not address it below. The court merely found, we think, erroneously that there was no meeting of the minds. We have to determine whether the, whether a contract arbitrate exists under Pennsylvania law, do we not? As a threshold matter, correct. Okay. Uh, is there any Pennsylvania case? You, you, you referred to Sally. I'm surprised you didn't send us a 28-J letter on Sally. Well, Sally, it was an unconscionability case and we weren't dealing with that. I thought about it, but under Pennsylvania law, is there any Pennsylvania law that says that posting a contract on the website, uh, could bind the parties? I think the pencil, I haven't found anything just that says that. What I have found though, was that if someone says they know they have an agreement, they have an affirmative duty to go get that agreement. If they can't locate, do you cite that case? I do a side, a bunch of cases in the brief on that. Okay. And I cite the restatement on that. I mean, it's sort of a general legal principle. That's part of the pleading. The plaintiffs is if you sign anything, you're pleading, you have to produce the document under the federal rules of civil procedure. And what happens here under the, under the Pennsylvania rules, he had an obligation to attach to murder. This case started in Pennsylvania state court. He knows he has an agreement and he goes out of the way. This guy can't find it. So he says something a little bit different. He says he never signed that agreement, but there is an agreement. Uh, he doesn't say he's bound by degrees. There's an agreement and there's promises proffering and, and, and, and advertising and so forth. So, you know, that's a, you might say it's cute, but maybe it holds legal water. Well, you know, of course, under the FAA, you don't need a signed agreement. You just need something in writing. Yes. Let me ask you, are you a, are you a steadfast in your feeling that you put enough forward by way of custom and usage in the initial installation with that affidavit, uh, that, uh, the court should have held an evidentiary hearing or maybe even a fact finding a determination by a jury as to whether or not the contract was formed at the initial installation? Well, as a matter of law, I think that we prevailed on that given the testimony. However, if the court were determined, we hadn't, I think absolutely we had presented enough evidence of that. One aspect, which is your strongest, which is your best, say a bridge or strongest suit is what my strongest argument is his signature on the, uh, on the work order. But one point, uh, in particular on that, go back to that work order question. So did you keep saying that your strongest point, if you don't have your contract and if you can't establish your policy through the deposition testimony of Sharon Desmond and her affidavit, if you don't have the contract, is the fact that you acknowledge on that work order that you're bound to a contract that you haven't yet seen? Does that's, does that, uh, make your case? I think, I think it does your honor, because I think it puts, it puts him on notice that there are provisions, his, his pleadings and his motion. Okay. He says, all right, look, I must've, there must be some contract here. I don't have it, which is what he alleges. He clearly says, I didn't sign anything other than this work order. You acknowledge that he didn't sign anything other than the work order. Okay. Uh, you know, I can see that you're entitled to the terms that are on your website for the provision of service. Everybody's paying the same thing. Whoever gets a service pays the same service, but something that's basic and fundamental, which changes, uh, the rights as to where you can adjudicate a claim from the courts to a arbitration forum. Shouldn't that be something that a subscriber should have to specifically sign off on? Um, absolutely not your honor. I mean, the FAA is perfectly clear what you're sort of suggesting is what the Supreme Court of the United States rejected. And that is treating arbitration provisions differently, uh, from other contracts. I mean, the court says, no, you can't do that. You have to treat it all one in the same. And that is you look to the contract itself and whether there's a contract, you don't look to the arbitration provision. You don't put special treatment on the arbitration provision. You're signing the FAA, but you have to go back to Pennsylvania law to determine whether or not there is a contract with an arbitration provision. Right. And without what I'm saying is the argument could be that without a Schwartz's signature to accept that arbitration clause, there isn't a contract, at least as to the arbitration. Well, I think that there's two steps to it. And that's, I think we're at a point where we might be getting tripped up. And that is there's a, you look to state law as to contract formation period. Is there a contract? And then one aspect of that contract is arbitration. There's nothing magical about the arbitration that requires a signature or anything else beyond traditional contract principles of meeting of the mind. That's what you look to. What are the traditional principles? You can't test an arbitration portion at a higher standard than a regular contract. That's what the Supreme Court has said. So I go back to traditional contract principles and I say, look, you have this provisions here. I continue to be subscribed. I continue to be bound by my subscriber agreement. You gotta go get it. That's the law. You can't just ignore that. My time is up. Okay. Thank you, Mr. McTighe. Did you, did you reserve your bottle? Three minutes. Good morning. My name is Ronald Smollow. I represent the appellee, Mr. Schwartz. Could you before you even get started, aren't you under the Federal Rules of Civil Procedure required, if you're suing on an agreement, a contract or whatever, to attach it to the pleadings or to produce it, a copy of it? We were required to, under state law, as far as the pleadings guide, the case was filed in the state system. I know, but you're bound by the Federal Rules of Civil Procedure. Yes. I think we are, if we have one. And the answer is yes. Well, if you're suing on one, the rule, I haven't got it right in front of me, requires you to attach it to the pleadings or produce it. And we couldn't produce it. We couldn't find it at the time. And that is explained in detail in Mr. Schwartz's affidavit. Can you find it now? Pardon me? Can you find it now? We can find it now. And as a matter of fact, the defendants, in their motion for removal and their motion to compel arbitration, produced a subscriber agreement. But we are not, that's not the thrust of our claim. The thrust of our claim are the promises that the defendant made in its advertising that service would always be won. And that's the thrust of the claim we acknowledged. And it is an everyday reality. And we said in the complaint that there's a subscriber agreements out there. But we alleged in the complaint that we did not have one. And we've also alleged in the complaint that was unconscionable. What is the relevance of the fact that you didn't have a copy? I mean, if I offer you a service and you know, I am offering it on terms in a subscriber's agreement and you say, okay, hook me up. Come on. I'm using your service and you use my service. You're not bound by by that agreement. You knew that that was the basis of my offer because you don't have a copy of it. The evidence here was that it was never delivered. Um, and I'm asking you the relevance of the answer is it's, it's, it's really not relevant when you, when if someone provides a service to you, uh, and then sends you a bill for that service and you pay the bill and that's the meeting of the minds. Uh, even if you know, even if you know, there is, I am offering you this service on the basis of subscriber agreement, there's, uh, uh, you, you might agree to certain terms in the subscriber agreement, but that doesn't mean that you know of an arbitration agreement or that you've agreed to the arbitration agreement. And the Barnett case and the Sandvik case makes very clear that on the one hand, you can challenge, you know, portions of the agreement and merely because you acknowledge the existence of a subscriber agreement doesn't mean you acknowledge or agree to it. But there isn't any doubt here that your client knew there was a subscriber agreement that this service was being offered. I disagree. I think there was data and there was no evidence that he knew of the subscriber agreement at the time that he received service prior to or at the time of the interruption of service. How about at the time that you discontinued internet service, but kept the balance, you signed an agreement at that time in which you acknowledge the existence of a subscriber agreement. The court found that that work order was for cancellation of television service. Uh, the word subscriber agreement in that work order, we believed referred to the TV service agreement and it's Trump and tested by her deposition that the agreements were different. We have no idea. We've never seen that, but that's the agreement that would have been referred to in the work order for removal of TV service, not the subscriber agreement for internet service, which is the subject of the case. Yeah, I know. But, but in that agreement where you discontinue the internet service, I mean, yes, uh, TV service, TV service. Yeah. You, you, um, acknowledged that the subscriber agreement is in full force. And in fact, uh, in fact, you, uh, in that agreement, even though you didn't sign a subscriber agreement, you agreed to be bound by the subscriber agreement that would have been the subscriber in that work order. That would have been the subscriber agreement for TV service, which is different than as testified to the subscriber agreement for internet service. It had no limitation as to just TV service. Well, it did not. Pardon? In the affidavit that Mr. Sherman submitted, uh, he said he didn't understand those words to mean, um, uh, to mean the internet service subscription. He said at the time he signed that, no, he didn't read it carefully. Uh, but had he read it carefully, he would have taken those words since the work involved termination of his TV service. He would have taken those words to mean the, uh, subscription agreement and his TV. But, but isn't it a, isn't contract construction a question of law for the contract and see what, if there's no ambiguity of it, uh, we're not interpreting it, we're just constructing the contract. And if we agree with the appellant, I'm not saying we do or don't, that by the terms of that, uh, uh, uh, work order, you agreed to be bound by the subscription agreement. Uh, what, what question of fact is there to decide? If you find based on this record that, uh, based on, uh, based on Mr. Stroman's testimony, that the subscriber agreement is different for work for, for TV service. And if you believe that Mr. Schwartz, uh, it was reasonable for Mr. Schwartz to, to believe that, that those terms, subscriber agreement and that work order referred to his internet service, then, uh, you should find that there was a, that he had knowledge of the subscriber agreement from the, uh, from internet. Uh, if the court believes that, uh, the district court found that based on the record before it, uh, that there was no, that that would be an unreasonable thing for a consumer to do. How do we review the district court's determination, a question of law, or do we owe a deference in its construction of the contract? Uh, I think that you owe the, uh, the court deference in the construction of this contract because it's based on the factual record. I think you have to defer to the court to its interpretation of the evidence. Um, and I, uh, I think that includes in, in the, uh, the party's understanding as to words in the contract. The, um, my understanding of the law, summary judgment law is that if a party is trying to get some relief from the court, uh, and it has the burden of proof, it has the obligation to, uh, tender a prima facie case. Uh, but once it does tender a prima facie case, the other side has to come forward with competent evidence to, uh, contradict or rebut it, or the person who's moving for relief is entitled to relief. Now, here they came forward and they said, we went to his house and we, and we put in this service and he used this service and, uh, they point out that, uh, in his complaint, he says, uh, Comcast promises were set forth in its subscription agreements and his communications with the class plaintiff does not have a copy of his subscription agreement and therefore it is not attached. Now, just based on the fact that he took the service, don't you think that you could infer that that service was being offered on the basis of some, of some terms and conditions like perhaps paying a fee or something? I, I, I think generally speaking, uh, someone could make that inference if that was the only evidence in this case. That's not the only evidence in this case. Okay. Well, that's, that's my final question is going to be assuming that there was a prima facie case that he was aware that the service was not being provided for to him for free, but subject to terms and conditions set by Comcast. Where in the record is there any evidence from your client saying, I did not know that there was an agreement that this service was being provided to me on the basis of, uh, it was twofold. Number one, it was in his accommodation. Number one, he did not receive one at the time. And secondly, he searched for it and he testified that he made a diligent search for it on the just for the purpose of my question, that it's not necessary that you get a copy in order to be bound by a contract. If there is a contract and you accept services pursuant to it. Now, is there any, this is kind of a dodge game. He, he, he says all kinds of things about not having on the basis of a subscription agreement. He never says that, does he? I, I, I'm not sure if he said, I don't believe that the affidavit says those words. And I think the court is trying to draw an inference from the receipt of service that he must have done that. Uh, but I, I disagree with the court's premise. Number one, that the defendant met its prima facie burden of showing some delivery. And I think the fundamental question here is, was there a meeting of the minds? And that's what's required for a contract to be formed. Um, and we live with this day by day, uh, in modern society that people are bound by contracts that they're not expected to read. They're stuffed in, uh, packaging boxes. They're put on the internet someplace, but there has to be some notice to the individual by the defendant, by the business person, uh, and not merely notice of the service, but notice of the written terms of a contract. And that is something that is missing from this case. And the district court said it was missing that the defendant offered no evidence of delivery of the contract or of notice to my patient case was not produced by the defendant. They did have testimony regarding some policy and practice, uh, but the testimony, and I think the court correctly discounted it because it didn't negate the fact that my client said I never got it. And, uh, and that's, that's what the court found. It's a question of law. It's whether you have a contract, whether you have to have received if you know that there's a contract that's being, the services being offered on the basis of it, whether you have to have a copy of that in order for it to be binding. You say as a matter of law, you do. And I, I'm not quite sure what you cite. I said, I say that there has to be some delivery of the contract. Uh, I think the part of the, uh, uh, when you said a state law case, uh, in terms of, uh, there must be a meeting of the minds and agree that there had to be, I don't have a state law case. We don't know. We don't have a state law case that says that a contract out there, uh, is invalid and not binding unless it is delivered. When you say state law, that there has to be some meeting of the minds in terms of a contract. And in this case, uh, there has to be a meeting of the minds also over the arbitration provision. And that is the, uh, the, uh, the Barnett case and that is the Sandvik case. So just getting to the delivery of a subscription agreement still doesn't prove, uh, that my client had notice or knowledge of arbitration courts. Just backing up backwater to the original, uh, position, which you say that you're, you're part of this, uh, agreement of, uh, arbit, uh, uh, you never signed it, this arbitration today, but you're suing under it. Uh, don't you have to now produce that agreement that you're suing under? We don't rely on any of the terms in the subscriber agreement for our case. And, uh, I mean, it's in the record, but we don't rely upon it in any way, shape or form, but you're, you're suing, acknowledging that you're a, that there is a subscriber, that there is an agreement that you have with Comcast in which they agreed to give you the We do, but we're, our claim is not based on anything in that document. So I couldn't care whether or not the defendant offers it into evidence or not at the trial. I don't intend to offer it into evidence. It's not my case. Um, they want to offer it, not necessarily for the terms of that contract. They want to offer it defensively and they also want to offer it to offering at this point before arbitration clause. And there's a, there's a disconnect between, uh, they never established delivery of this contract. It's a, it's a really, it's a simple, it's a business. Well, if the contract, if the subscriber, then if the, if you claim you have an oral agreement, in other words, that they installed this under and nothing in writing, then how can they be bound to give internet service or any service, uh, continually, uh, if there's nothing in which, uh, they agreed to do that. Because of the representations, they did make representations that service would always be on 24 seven. That's advertising. Yes. Yeah. But that advertising is not part of a contract. Uh, we think it is. Mr. Smollo, isn't, isn't the evidence that Comcast put forward of their policy of delivering a subscription agreement with the installation service, doesn't that constitute proof of actual notice of the subscription agreement to Mr. Schwartz? No. If so, why not? If not, why not? First of all, the woman was not competent to testify regarding the policy of practice, but assuming, uh, uh, all that policy and practice was that they delivered a piece of paper, uh, and a welcome kit. Uh, my client produced a copy of the welcome kit that he received and it didn't contain, uh, the paper that they suggested it contain. So it's a, it's a policy in practice, but it doesn't defeat my client's testimony that was not rebutted and the court found not rebutted that, uh, he to determine whether or not there was a policy or practice sufficient to form a question of fact, contrary to your client's position that he never received anything in writing, uh, is sufficient to require a factual adjudication as to whether or not he did or did not receive, uh, the, the subscription agreement. I think as a prior fact, I think the judge was saying, uh, at this stage that even if we go to trial on this matter, I've got a policy in practice where the company claims it has a policy of delivering something to this individual. The individual says, I didn't receive it. Uh, the company then has to come back with someone, a delivery person, an installer, a business record, anything to say we did it and they didn't do that. Well, they never got the opportunity to do that. They would, they would have done that in, in other words, this, this is a matter of a contract. Uh, uh, they're trying to prove that there is a contract and that's a question of fact as to whether or not a contract was formed. Aren't they entitled to a hearing? I think a jury hearing as to whether or not delivery was made such that there was a contract including an arbitration agreement. They had an opportunity to respond to Mr. Schwartz's testimony. Uh, in fact, they submitted a subsequent affidavit and declaration. Uh, the, the proceedings, the motion practice on this particular motion to compel went on for approximately a year. So there was plenty of opportunity for Comcast to respond and put on some evidence. We think it was the prime evidence of delivery. Uh, and then, uh, even of the, of the, uh, policy and practice that the policy and practice was likely to, uh, provide, uh, my client. Well, your position is that they, uh, Comcast never made a sufficient showing that there was enough, uh, that as a matter of law, they never made a sufficient showing to show, to, uh, require a factual adjudication as to whether or not there was a practice, uh, of delivery and so forth sufficient to go to a jury. That's correct. I understand. Mr. Small, I know your red light's on. Clarify something for me here. Uh, this is a class action. Yes. Uh, your class action remains alive by virtue of the, uh, the decision of the district court. It's not, it's not been referred to arbitration, which also contains a clause that it says has to be arbitration and individual basics, correct? Correct. Okay. Uh, let's suppose that we find that, uh, as it applies to Mr. Schwartz, that Comcast didn't have a contract, there was a contract, and as to Schwartz's claim that his service was disrupted, he has to go to arbitration. What's that do to the rest of the class? Uh, according to the contract, it says that if that provision is, uh, is enforced and not found to be unconscionable, uh, I think their claims will go away and, uh, they're just, uh, destroyed. Well, you could substitute, you could move to arbitration. I mean, if the second plaintiff that came along, uh, Mr. Smith, if he comes along and, uh, unless he can show he didn't get the copy of the agreement. Uh, so anybody who acknowledged they had the copy of the agreement is bond by the individual arbitration clause. And that in effect would be the end of, uh, class actions involving Comcast service on, uh, subscribers who had arbitration agreements. Uh, well, I think that this clause is enforced, I think, uh, under this fiction that if there's something on the internet, you better go look at it before you receive the service. Uh, uh, and it is a fiction and we will live with it. But the problem here is that it takes away the meaningful remedy of getting into court or getting anywhere. This arbitration respondent might have one, uh, 15 seconds to, uh, the unconscionability issue in this case flows out of this contract because under the terms of the arbitration provision, my client could be responsible for their attorney's fees under the provisions of this arbitration clause. And that is the unconscionability of this on its face of this clause. That's not before. That's not interesting. Thank you very much. Thank you very much. Very briefly, your honor. And one thing I wanted to say, I assume the court knows this, the court has, uh, de novo authority over reviewing contract interpretation. Um, it's not, uh, no deference need be given to the court. The court below did not rule anything about a gave the plaintiff what it's saying, what it claimed was all benefit, all benefit of all reasonable doubts and inferences and said there was insufficient evidence did not rule as a matter of law. Comcast couldn't make out its case. Um, did the court rule though on your showing of accustomed usage, uh, that, uh, in effect that you didn't make a sufficient showing, uh, which would require a hearing, either a jury trial or even a evidentiary hearing as to whether or not you had a custom of delivering this. And, uh, uh, in fact, finally could find that there was a, uh, contract made, but you didn't make a sufficient showing, uh, through the affidavit of this lady. Let me read what the court actually said. It said, quote, the existence of a policy to hand the subscriber agreement to all consumers does not constitute proof of quote, actual notice to this particular plan didn't, didn't really pass on our policy. It was looking for actual, I guess it was looking for the, the tack who was there, who actually handed it to the, uh, to Mr., uh, to Mr. Schwartz, which would be virtually impossible to do. The courts have repeatedly said that if you have a policy in practice, like a mailing, you can, if you show your mailing, you have established receipt, even if a plaintiff claims that he didn't receive it. That's what the courts have repeatedly held in these arbitration decisions. One other point I don't think we I could not negotiate the terms of internet service with Comcast. Well, what does that mean? Again, plaintiff knew that they were terms and conditions and that he had, he was bound by them. Well, it could mean he thought he couldn't negotiate orally the terms and conditions. He couldn't negotiate what it was always on. Is that the only term and condition? I mean, it doesn't make any sense. It doesn't advance your position that he actually got a copy though, that he says that deep. Right. And I, I submit from my position, he doesn't need to have, we don't need to prove actual receipt of the copy in order to prove that he's bound by the agreement. One other point he said, he now claims today, uh, counsel now claims today that it was an oral contract. Well, that can't be right. This case started in Pennsylvania state court, Pennsylvania state court requires you to plea the existence of an oral contract. If there's an oral contract, never has he pled that there was an oral contract. This has just come up on appeal. There was a written contract. He knew it. He had then a duty under the law to go get it. He cannot now claim that he's not bound by it, but all the other class members are bound by it. And all the other class members have similar contract interpretation issues. It makes no sense. Your Honor, I think the lower court decision should be reversed and the court should compel arbitration in this matter. Thank you. Thank you. Mr. Time. Thank you. Thank both counsel for cases very well argued and we'll take the matter under advice.